542 So.2d 658 (1989)
Norah STEWART
v.
ORMOND COUNTRY CLUB, et al.
No. 88-CA-826.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
Writ Denied June 2, 1989.
Robert Faucheux, Jr., LaPlace, for plaintiff-appellee.
Jeffery Napolitano, Denis Paul Juge, New Orleans, for defendant-appellant.
Before CHEHARDY, C.J., and DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
Norah Stewart's former employer, Ormond Country Club, and its worker's compensation insurer, General Accident Insurance Company, appeal the trial court's judgment of total and permanent disability benefits awarded pursuant to LSA-R.S. 23:1221(2). General assigned the following errors for our review:
1.) The trial court erred when it found that Stewart met his burden of proving permanent and total disability in accordance with LSA-R.S. 23:1221(2).
2.) The trial court erred when it found that Stewart had no post-accident wage earning capacity.
The facts of this litigation are not in dispute. The injury occurred September 30, 1983, when Stewart, a greens keeper at Ormond Country Club in Destrehan, Louisiana, injured his lower back while mowing grass on the edge of a sand trap. Stewart informed Ormond and on October 3, 1983, he was seen as a patient at River Parishes Medical Center. Subsequently, he was placed under the care of V.J. Zeringue, M.D. (an orthopedist). After continuous complaints of pain and with conservative care, Dr. Zeringue performed a diskectomy of the spinal region located at L4-L5 and L5-S1 levels on June 27, 1984.
The parties stipulated that there was an injury to Stewart while he was in the performance of work related duties, and that his average weekly wage was $200.00; that General paid weekly worker's compensation *659 benefits in the amount of $133.30 from September 30, 1983 through April 1, 1987, and from April 1, 1987, General has paid Supplemental Earnings Benefits (SEB) in the amount of $34.04 per week. However, the parties dispute Stewart's physical condition and functional disability as well as his wage earning capacity.
The medical testimony presented at trial is not disputed. Dr. Zeringue treated Stewart from the time of his accident until March 10, 1988. After the back surgery on June, 1984, he continued with post-operative care. Dr. Zeringue felt that Stewart showed slow, but positive improvement, with increasing amount of an ability to move.
Dr. Zeringue felt that Stewart could return to light duty, as long as he performed no repetitive stooping and bending, or lifting anything over 40 pounds. At the time of trial Dr. Zeringue felt that Stewart's physical condition had stabilized, and that he had reached maximum medical improvement.
After Dr. Zeringue discharged Stewart to return to light duty employment, General instituted a vocational rehabilitation program designed to evaluate Stewart and place him into some light duty employment. The vocational counsellor, occupational and physical therapists hired by General agreed that certain jobs could be identified, the record reflects that all of these employment opportunities would cause Stewart to endure severe pain while engaged in any work.
Since the job accident occurred on September 30, 1983, LSA-R.S. 23:1221, as amended by Acts 1983, 1st Ex.Sess., No. 1, Section 1, effective July 1, 1983, governs the termination of whether an injured employee is entitled to permanent total disability or supplemental earnings benefits. As the court in Beckham v. Commercial Union Ins. Co., 517 So.2d 886 (La.App. 3rd Cir.1987), accurately pointed out, the 1983 amendment established a stricter standard for establishing permanent and total disability. The court in Beckham pointed out that "the claimant must prove, by clear and convincing evidence, that he is physically unable to engage in any employment or self-employment, regardless of the nature of the employment or self-employment, including `any and all Odd-Lot employment, sheltered employment, or employment while working in any pain, not withstanding the location or availability of any such employment or self-employment'. La.R.S. 23:1221(2)(a), (b), (c)." [emphasis provided by the court] 517 So.2d at 889.
The trial court found Stewart to be permanently and totally disabled. The court expressly embraced the "clear and convincing evidence" standard when rendering its opinion. The court stated in its opinion: "But for his disability, Stewart could still work." The court clearly found that Stewart could not work and stated that "... the testimony of Dr. Zeringue proves to this court the disability and incapacity of Mr. Stewart.... Any future work will still be done in pain. I further find that plaintiff (Stewart) falls within the ambit of LSA-R. S. 23:1221 and has proven his physical inability to engage in any employment at the present time."
The testimony of Stewart himself reveals that since the injury he suffered constant severe pain, radiating down his legs. He was unable to perform most of his normal day to day duties without the onset of pain.
The manifest error rule is applicable to review of worker's compensation cases and the trial court's factual findings of work-related disability will not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings unless they are shown to be clearly wrong. Underwood v. Southern Casualty Ins., 525 So.2d 633 (La.App. 3rd Cir.1988); Guerrero v. Tico, 436 So.2d 1237 (La.App. 5th Cir.1983).
Whether Stewart experiences pain while working, and the extent thereof, are factual questions. The trial court's factual findings as to disability is the court's function to be determined by the weight of the evidence accorded by the court. Guerrero, supra. The credibility assigned by the trial *660 court to testimony and other evidentiary matters in a worker's compensation case must be given great weight upon review. Perrilloux v. Godchaux-Henderson Sugar Co., 436 So.2d 1325 (La.App. 5th Cir.1983).
Here the trial court expressly found that Stewart was unable to pursue any gainful employment without experiencing substantial pain.
Our review of the facts amply support that Stewart proved by clear and convincing evidence that he is physically incapable of performing any employment without pain.
General has failed to show that the trial court was manifestly erroneous in finding Stewart totally and permanently disabled and physically incapable of performing any employment.
Accordingly, we find no reason to disturb the trial court's judgment, and for the reasons expressed above, we affirm.
AFFIRMED.