629 So.2d 465 (1993)
Mary S. ARABIE, Plaintiff-Appellant,
v.
CITY OF EUNICE, Defendant-Appellee.
No. 93-487.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*466 Malcolm Brasseaux, Church Point, for Mary S. Arabie.
Laura Katherine Austin, Lafayette, for City of Eunice.
Before DOUCET, YELVERTON and WOODARD, JJ.
DOUCET, Judge.
This is an appeal from a judgment of an administrative hearing officer (hearing officer) dismissing the plaintiff's claim for continuance of her workers' compensation benefits.
On August 9, 1987, Mary S. Arabie, plaintiff-appellant herein, was employed by the City of Eunice as a cafeteria worker for the summer only. She lifted a case of No. 10 cans of tomato sauce and one of the cans fell out of the box onto her left foot. She was able to finish her work day. The next day she consulted Dr. Reginald Segar about her foot. He treated her and she returned to work and continued to work until the end of the summer, when her job with the City of Eunice ended. Ms. Arabie then went back to her regular job as a cafeteria worker for the St. Landry Parish School Board. She worked the 1987-88 school year but was unable to return to work at the beginning of the 1988-89 school year and has not been employed since. Surgery was performed on her foot on October 1, 1988, and again on August 8, 1989.
Ms. Arabie originally filed suit for workers' compensation benefits on November 10, 1988 in the 27th Judicial District Court. A settlement was reached and the suit was dismissed in January 1990. As a result of the settlement, Ms. Arabie received temporary total disability benefits and her medical expenses were paid. On August 22, 1990, the defendant discontinued payment to Ms. Arabie of benefits and medical expenses based, apparently, on the results of a medical exam by Dr. Jack Hurst.
Ms. Arabie filed this claim on February 25, 1991, seeking to have her benefits reinstated. A hearing was held on June 27, 1991. On July 9, 1991, the hearing officer ordered a nerve conduction study be performed on Ms. Arabie's foot. On March 19, 1991, another hearing was held as a result of which further tests were ordered. After receiving all the test results and/or medical reports interpreting the test results, the hearing officer rendered judgment dismissing the plaintiff's claim with prejudice. Ms. Arabie appeals *467 seeking continued benefits and penalties and attorney's fees.

DISABILITY
The manifest error rule is applicable to the appeal of workers' compensation cases. In the absence of manifest error the factual findings of the hearing officer with regard to disability will not be disturbed where there is evidence before the hearing officer which, upon his reasonable credibility evaluation, provides a reasonable factual basis for the findings. Allen v. Louisiana-Pacific Corp., 512 So.2d 556 (La.App. 3 Cir. 1987); Stewart v. Ormond Country Club, 542 So.2d 658 (La.App. 5 Cir.), writ denied, 544 So.2d 408 (La.1989).
In this case, the record on appeal consists mainly of testimony and reports from the various doctors who examined or treated Ms. Arabie. The record does not include a transcript of testimony from the June 27, 1991 hearing. The trial judge's determination however, appears to have been based on his evaluation of the medical evidence. The record before us forms an adequate basis upon which to rest a determination in this matter.
The deposition of Dr. Lon Baronne was introduced into the record. Dr. Baronne is a podiatrist, not board certified or eligible at the time of his testimony because he had been in practice less than five years. Dr. Baronne treated Ms. Arabie from August or September of 1988 through the time of trial. When he began seeing her, she was complaining of pain on the top of the arch of her foot radiating toward her toes. On September 30, 1988, Dr. Baronne performed surgery to remove subcutaneous nerves. It was expected that this would relieve Ms. Arabie's pain. However, after the surgery she began to complain of pain in the areas next to where the nerve was cut. Dr. Baronne diagnosed the problem as stump neuroma. He explained stump neuroma saying that when nerves are cut or injured, a bulb of fibrous scar tissue may form in which nerve endings may be trapped, causing pain. Also, Ms. Arabie began to complain of pain down from the top of her ankle around the side of the foot by the big toe joint.
In August 1989, Dr. Baronne again performed surgery to relieve the pain by taking out the stump neuroma and cutting out the nerves which could be causing the new complaints.
In November 1989, Ms. Arabie began to complain of pain on the bottom of her foot between the first and second toes. Dr. Baronne suspected tarsal tunnel syndrome which, according to Dr. Baronne, is usually caused by something pushing on the nerve in the area of the tarsal tunnel causing pain throughout the bottom of the foot. He stated that this condition might be due to the way Ms. Arabie held her foot while walking because of her pain. However, he stated that due to the fact that Ms. Arabie was walking very little, he was unable to pinpoint this or anything else as a possible cause for the syndrome. He stated that it was possible that surgery would be necessary to correct the condition but that nerve conduction studies should be run before any surgery. Also, in November 1989, Ms. Arabie was sent for consultation with Dr. Thomas Laborde, a rehabilitation physician. He mentioned tarsal tunnel syndrome, reflex sympathetic distrophy, and compression neuropathy as possible causes of her complaints.
As of February 1990, Dr. Baronne's diagnosis was that Ms. Arabie had a recurrence of stump neuroma and possible tarsal tunnel syndrome, both of which might require surgery. In February 1990, Dr. Baronne told Ms. Arabie that she should go back to work and see how much she could use her foot. However, at the time of his deposition in June 1991, he felt she could not return to work in the cafeteria. Dr. Baronne's notes show no progress through March of 1991.
Dr. Jack Hurst, who was qualified as an expert at trial in the field of neurosurgery, examined Ms. Arabie on April 11, 1990. He found her to be uncooperative in the exam. Ms. Arabie complained of pain in the bottom of her left foot. She also complained of pain in her left thigh which radiated into her left foot when the area was pressed. Dr. Hurst felt that there was no organic basis for this thigh-to-foot pain. He found mild Tinel's Sign in the area of the pain in the bottom of her foot. Tinel's Sign causes a tingling or *468 numb sensation when a nerve is irritated. Dr. Hurst felt that Ms. Arabie very likely at one time had some degree of injury to a distal branch of a peripheral nerve. He stated however, that the level of complaints of pain did not correlate with the problems detected on physical exam.
With regard to tarsal tunnel syndrome he stated that it is commonly found in persons whose feet are exposed to a lot of pounding, for instance athletes, among the obese, and among pregnant women who gain a lot of weight. He stated that even if Ms. Arabie had tarsal tunnel syndrome, it could not be connected with injury to the top of her foot. He recommended that Ms. Arabie lose weight.
On June 7, 1991, Ms. Arabie saw Dr. Alan Farries, an orthopedic surgeon. His report indicates that Ms. Arabie probably did have some minor sensory nerve damage secondary to her injury in 1987. He found however, that she had only minimal residual impairment, which was probably permanent. He recommended against further surgery.
A thermograph taken March 31, 1992, was interpreted by Dr. Laborde as confirming his former suggestion that Ms. Arabie had reflex sympathetic distrophy. A bone scan taken the same date was interpreted by the radiologist as showing patterns not typical of reflex sympathetic distrophy. The radiologist recommended an MRI.
The medical evidence as a whole is in conflict.
It is true that the testimony of a treating physician is generally entitled to greater weight than that of a physician who sees a claimant for litigation purposes only. However, a trial court's decision to accept the testimony of one expert over that of another can virtually never be manifestly erroneous. Dumas v. Hartford Ins. Co., 583 So.2d 31 (La.App. 4 Cir.1991). In this case, we find no error in the hearing officer's decision to credit Drs. Hurst and Farries over Dr. Baronne, especially in light of their fields of expertise and experience.
A review of the record reveals that a factual basis existed upon the trial court's reasonable credibility evaluation for the trial court's decision to dismiss Ms. Arabie's claim. Having so found, we need not consider her claim for penalties and attorney's fees.
Accordingly, the judgment of the hearing officer is affirmed at plaintiff-appellant's cost.
AFFIRMED.